The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons who have any matter or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are advised to draw a knife and give their attention. For the Court is now sitting, the eyes of the United States and this Honorable Court. Mr. Street, are you ready? Yes, Your Honor. May it please the Court, my name is Aaron Street and I represent Charter Day School, Inc. and its board members, as well as Roger Bacon Academy. Under Supreme Court precedent, a private contractor that provides publicly funded education services is not a state actor unless the state compels or influences the particular policy that's being challenged. Thus, the First and the Ninth Circuits have held that charter school operators and other public education contractors are not state actors. We submit that this Court should follow the well-reasoned path marked by those courts, reverse the district court on the Equal Protection Clause claim, and render summary judgment for the defendants. Charter Day School, Inc. is a private corporation run by a wholly private volunteer board. Counsel, let me ask you a plenary question. Since we're here on bond, what's the disposition of the Title IX claim? I couldn't tell from the petition for rehearing, have you conceded the Title IX claim or do you contest it? No, Your Honor, we do not concede the Title IX claim. We did not move for rehearing on bond, but our understanding is that the rehearing grant vacates the panel opinion, and so we are now back to reviewing the district court opinion, which granted summary judgment in our favor on the Title IX claim. So we do continue to raise that argument and we have addressed that argument extensively in our briefs. I'm certainly happy to address those arguments this morning if the Court would like, but I was planning on focusing on the state actor question since that was the subject of the rehearing petition that was granted by the Court. Well, it's a good question because your aim is not just state actor. You have a particular remedy you're seeking, and if the panel below unanimously went in a particular way, of course it is vacated. I think you're correct on that. The ultimate remedy you want is, of course, to have it declared as a state actor, but you certainly don't want the other to be a Title IX to be granted either. So I would think your focus would be on both unless you're here purely for a legal and academic basis to deal with state actor because you need both in order to bail. Is that correct? You're correct, Your Honor. To prevail, we need to win on both the state actor question and the Title IX question. And our position, of course, as we've laid out in our briefs on Title IX, is that a binding education department regulation has interpreted reasonably Title IX to not reach dress codes. That was the position that the district court agreed with, and we continue to press that position here today. Of course, if the court is inclined to stick with the panel opinion on that point, which, as you mentioned, was unanimous, then the court would need to reach the state actor question as well. What did the petition for rehearing ask for? The order granted the petition for rehearing, as I recall, and my question is, what did the petition for rehearing request? What did it want? Did it want just state action to be reviewed or did it ask for everything? Yes, Your Honor, the plaintiff's petition for rehearing asked only for rehearing on the state actor question. If the order says rehearing request granted, then what are we here for? I think that we are here because the entire panel opinion has been vacated, and I was under the assumption that the grant of rehearing was focused on the issue that was raised in the petition for rehearing, which is the state action question. Well, I think that's what the briefs all think, too. I just wondered, looking at the paperwork, I think the order says petition for rehearing is granted. We're perfectly happy to focus on the state action question. That's certainly the one where there's a clear division of the circuits, or at least at this point there's not a division. There's two circuits going our way and a district court decision going the other way. On that point, what we have is, again, a private corporation with a wholly private volunteer board, and we have a contract, a charter, with the state to provide education to children whose parents are freely choosing to send the children to that school. As a statutory matter, CBS Inc. and its volunteer board has the sole authority over operational decisions at the school. Okay, but Mr. Street, they do report to the Board of Education, do they not? They do report in certain limited respects, and that goes to the question of whether the regulation that is in existence here has anything to do with, does it compel or coerce the particular challenge uniform policy here. I think that it would be helpful for the court if you could focus on the fact that North Carolina, by statute, defines its schools as public schools. The teachers receive state retirement benefits. It's almost entirely publicly funded. If you could address not only the fact that this is a private charter corporation, but the fact that the state law has specifically designated it as a public school, and the funding stream has followed that designation. I'm happy to focus on that, Your Honor, and of course, the designation in the statute of the function that's being provided by the public and the private entity here does not answer the relevant question under Supreme Court precedent, which is whether that public function is a traditionally exclusive government function. That's why in the cases of Jackson v. Metropolitan Edison and the Supreme Court... Public education isn't a traditional function? It is not a traditionally exclusive government function, and the plaintiffs have not cited a single appellate case anywhere in the country that holds that any kind of education is a traditionally exclusive function. The private corporation is operating a public school, and isn't operation of public schools traditionally an exclusive state function? Your Honor, I don't think you can frame the inquiry in a way that assumes the answer to the question. I'm basically quoting now that we're supposed to ask whether the entity is exercising powers that are traditionally and exclusively the prerogative of the state, and the power the corporation is exercising here is the power to operate a school denominated public by state law, so I think that is the question. Well, and Your Honor, that was exactly the question faced by the Ninth Circuit and Kavanaugh's, which also involved a private entity operating a public school, and we think the court correctly said there that adjectives like public or free are not part of the functional inquiry. The Kavanaugh's was different though, Counsel, wasn't it? Because Kavanaugh's involved an employee's claim. It wasn't talking about the core mission of educating the students and the educational philosophy of the school. Kavanaugh's involved an employee who was claiming that, what was he, due process violation because he did not receive a positive recommendation for future employment. So that's different than the pedagogical mission of a school to attempt to instill respect by forcing girls to wear skirts, isn't it? I mean, isn't that apples and oranges? Well, it's certainly a factual distinction, Your Honor. We don't think it makes a legal difference, and certainly the First Circuit in the Loggio Di's case rejected the distinction between employee and student type claims, and I think the reason is because whether it's an employee claim or a student claim, the question is what function is the defendant providing, and even if Your Honor is right to draw this factual distinction, and the function is providing an education, providing a pedagogical philosophy, those are no more traditional exclusive state functions than providing an employment agreement. In our view, there's no justification, no support in the case law for the idea that you parse education down into its constituent parts of hiring teachers and disciplining students. But does anybody provide a free public education other than the state of North Carolina? In North Carolina, is there a free public education given to any student by anyone other than the state? Absolutely, Your Honor, our client in Michigan. Exactly, but my point is if you're talking about a free public education and the state has said that these are public schools and is funding them as public schools, it's not like Rendell Baker where there was a contract between the state and the private institution, and the private institution and the state agreed that the private institution was a contractor. The contract itself called them a contractor, but here we've got the statutory designation with the funding that flowed directly from the statutory designation, so it seems to me you've got to at least admit that there is a distinction between the cases that you're relying on and our case. Whether we ultimately agree with you or not, there is a significant factual distinction. Your Honor, I don't see a lot of distinction between Rendell Baker and this case in terms of the way the agreement with the private entity and the state was structured. Here we have a private entity as well that has entered into a charter, which everybody agrees is a contract. It can be enforced through breach of contract and termination of the contract. But it was an employee discharge issue again in Rendell Baker, and the contracted issue called Rendell Baker a contractor, not a free public school. Yes, Your Honor, but the court in Rendell Baker did not say is the provision of employment of traditional exclusive public function. It said is the provision of education in that context. Can I follow up on that? You cited Kavanagh's, and obviously if you cite Kavanagh's, you can't just pick and choose between the rationales and the case. As I read Kavanagh's, Kavanagh's was laser focused on, even if we agree with you that education is not solely a public, exclusively a public function, the relevant question is what is the conduct, that issue in the case? That's what Kavanagh's was focused on, so if we focus on the conduct, getting back to Jeff Keenan's question, the conduct in this case is a challenge to the core educational mission as perceived by the educators in this charter school. So why isn't that an essential example of state action in the context of public education? So I think, Your Honor, there are two steps to the analysis that go to that question of the laser focus on the particular conduct being challenged. So the first question is whether something is a traditional exclusive state function. That does not focus at that level on the conduct being challenged. So I think I've answered those questions regarding our view on that. The second issue is whether the government, the state, has compelled or influenced the particular challenged conduct. And you're right to say that's where Kavanagh's focused on the particular conduct which was the discharge of the employee. So let's apply that analysis to our case. It's undisputed that the state had no influence whatsoever on the uniform policy at Charter Day School 8. So when we apply that laser focus that Kavanagh's applied, it reveals that there is no state action. Let me ask you something about the implications of your position. Is it your view that Charter Day School could adopt a policy of expelling any student who wears a black armband to protest the Vietnam War? Your Honor, our position is that that would not be state action, but that may very well violate other civil rights protections. What would it violate? It would violate the First Amendment if they're a state actor, but it wouldn't violate Title IX. It wouldn't violate Title VI. It wouldn't violate the ADA or the Rehabilitation Act. What would it violate? My only reservation is I'm not familiar with whether there would be any state protections that that would violate. What I know it would violate is the charter that it has with the state of North Carolina. The state, I suspect, would immediately come in and enforce against the school under that policy. Why should the State Council be in a position, and why should students have to surrender their constitutional rights and have to rely on essentially a contract action for breach of the charter? Let's take Judge Hyden's example a little bit further. What if CDS said that all African American students had to sit in the back of the class and couldn't speak? You and your argument today would still have us find that they weren't state actors, that their only remedy would be for breach of the charter contract. Would it not? That's not correct, Your Honor. You are correct to say that we would not agree that there is state action there because, again, the same test applies. Well, were these people state actors when they made the African American students sit in the back of the class? Was CDS, which adopted its policy as its corporate board or whatever, that blacks had to sit in the back of the class? That's where they belonged. And you would come in here today and say they weren't state actors, would you not? That's correct, Your Honor. If it's not a traditional and exclusive state function and the state did not compel or influence that policy, it would not affect the state action question, but I would... So the students surrender their constitutional rights by going to your school, which is a free public school, and then they have to go seek a breach of contract remedy in order for these African American students to be able to be full participants at your school. That's what you're saying, aren't you? No, are you saying yes or no, sir? Yes, you're absolutely correct. They would not have a constitutional claim in federal court under Section 1983. What they would have would be... So the school can violate the Constitution in all manner of ways and it does not matter, aside from a contract litigation? Well, in any state action question, if an actor is a private actor under the Supreme Court's case law, and it says that follows, but... So that's your argument, that the school can violate the Constitution in any manner and the only repercussion is a contract action? Your Honor, let me point out that under the hypothetical given by Judge Keenan, that would violate Title VI, which prohibits race discrimination by federal funding recipients, and again, if the court sticks with the panel's decision on Title IX... But it wouldn't violate the Equal Protection Clause. That's correct, Your Honor. It would not violate the Equal Protection Clause. The blacks have to sit in the back row. It would not violate the Equal Protection Clause because every constitutional claim must first get over the state action threshold. Now, I think the questions have, in a sense, called into question the availability or the validity of this enforcement via the charter, but we have no reason to believe that the state will not vigorously and appropriately enforce these charter agreements. The plaintiffs in this very case have a third-party beneficiary action to enforce the charter against the defendants in this case. Okay, so if there was compelled prayer of CDS's preferred religion, and they required every student to recite their preferred prayer, it would be the same result, right? No state action, no equal protection violation, you would have to go against the charter. Is that correct? Yes, Your Honor. Holding every other fact equal in this case, yes. Okay, let's take it down to the pedagogical level then. What if Charter Day decided that girls, in addition to having to wear skirts, they just can't cut it in advanced mathematics, they can't cut it in science. And so girls can only take entry-level courses that meet the state requirements. And the advanced math, advanced science are reserved for boys only. Again, no state action under your theory, right? No, there's no state action. The answer does not change if you're holding all the other facts equal. Now, it's unimaginable that the state would not immediately revoke the charter of the school in that instance. Well, yeah, but Judge King's point is there's no constitutional remedy. You're saying all of this can go on, and these students have no constitutional remedy that they have to seek redress in another form. They have no constitutional remedy under Section 1983. Why would the state create that kind of a, I'm trying not to say monster, but why would the state create that kind of an entity that could run roughshod over people's constitutional rights? Well, I think it's precisely because the state can enforce the contract. And if you look at, for example, the First Circuit and the Ninth Circuit, which would give precisely the same answer I just gave to your Honor's question about no state action, we don't have any evidence that there are rampant constitutional violations in the charter schools or the public education contractors in those states. And that's because, for one thing, charter schools depend on the free choice of parents. They're not going to send their children to a school like that. I keep saying that the state can enforce this, but I just want to be clear. In your view, the only reason the state can enforce this is because the charter requires them to follow the Constitution. If the charter didn't require them to follow the Constitution, in your view, the state couldn't even enforce it, right? That is correct, Your Honor. So in other words, to the extent you even have this limited right of the state protecting you, it is only because the charter does it. It's not because you have any right independent of the charter. So if they deleted that clause from the charter, you couldn't even go to the state, could you? You could not go to the state. Again, you would have recourse under Title VI for the race scenario. And if the court sticks with the panel's opinion on Title IX, you would have recourse with respect to federal courts on Title IX type of claims. Now, I do think when we're talking about the term public in the statute, we should look at the rest of the statute to determine what the state of North Carolina means by the term public. Does it mean governmental or exclusively governmental? And I think there the answer is quite clear. The very provision that calls these public schools that they shall be operated by a private corporation with a private nonprofit volunteer board. And importantly, it also says that the charter school will be, quote, exempt from virtually all of the statutes that apply to traditional public schools. The statute also provides that the nonprofit's board has sole and plenary authority over the operational Counsel? Yes, Your Honor. Counsel, you're not saying that everything that the private school, that the charter school does, is not state action, are you? I mean, you can envision things such as the hypotheticals that have been brought out this morning about requiring students of one race to sit in the back of the classroom or whatever. Is it your view that those are invariably private action or might there be other functions, issues, which are different from the dress code here that might implicate the state to a greater degree and actually be state action? Aren't there a variety of things that the charter school could do that might be, if we follow a function by function approach, a charter school can take action that might be state action, can it? Absolutely, Your Honor. And that's why I answered Judge Diaz in the way that I did, that the question does focus on the particular challenge policy and looks at whether the state has compelled it. But we're not saying that charter schools have the right to engage in some of these perfectly horrible hypotheticals that my good colleagues have brought forward. We're not giving them carte blanche under the Constitution to do that because that may well be state action. All we have before us today is a question of a particular dress code and whether that particular function is state action, not whether everything charter schools do is or is not state action. Isn't it important to stay narrow here? Yes, Your Honor. I think that's the teaching of the Supreme Court's cases. Every function or policy that was challenged would have to be run through the traditional state action analysis, and the answer could very well be different. Your answers actually haven't stayed very narrow. My question was whether the school could just violate the Constitution carte blanche, and you said, as I understood it, yes. But they would have a different recourse. They're a state actor. They're not a state actor, so yes, they could do whatever they wanted. Well, Your Honor, I tried to preface my answer to each question by saying if all the other facts were held equal, and I think that gets to what Judge Wilkinson was asking about. There may well be different facts where the state is involved in a different way in some of these hypotheticals. But, Mr. Street, you never changed your answer that in all those scenarios, your client is still not a state actor. Yes, Your Honor. If you hold all of the other facts equal in this case and you don't tell me… Well, in this case, in all those scenarios, you said they were still not the state actors. Am I correct? Am I misinformed? No, Your Honor. I'm subject to the caveat that we don't know anything else about the hypothetical other than the facts of this case. If the state has not compelled or influenced a particular challenge to action and the particular function that we're talking about is not a traditional exclusive state function, then there would be no state action. But I think to Judge Hyten's question, you can imagine a scenario where the state is petitioned or asked to correct the problem and the state puts its stamp of approval and says, no, we have endorsed this as the state, we have come down on the side of some of these horrible hypotheticals that have been given, then we may very well have a different answer. Well, but feeling that, I mean, you heard all the hypotheticals, and part of the hypothetical was not that the state has come down and blessed it, but that your client has done it. And is there a constitutional claim? And you said no each time, and I don't think you can say anything else. I stand by that 100%, Your Honor, and I think that is the very nature of the state action versus private action dichotomy. The Supreme Court has said, and Blum and Edmondson and many other cases, that that doctrine provides a leeway for policies that some might deem discriminatory, but that is the nature of the robust sphere of individual liberty. Mr. Street, what would the state have had to do in this case in order for the implementation of this particular dress code to have been state action under your view? Well, I think they would have had to have a regulation that encouraged or influenced the adoption of the dress code. That would be what we see in the Rendell Baker scenario where the court said that the state had not done anything to influence the personnel decision in that case. So you could imagine a scenario where a state, it's hard to imagine this, but a state saying that a school must adopt a particular type of dress code, a sex-specific dress code or something like that. But it's undisputed in this case that the state had no regulation in the area of dress codes. It had no influence or input whatsoever, and so we are in... But isn't that, I mean, that's the very purpose of having these charter schools. By definition, they're allowed to innovate and experiment. So it makes perfect sense that they wouldn't have an overly detailed set of codes and regulations. But why should that matter? Well, that's the test that the Supreme Court has stated. In Blum, for example, the Supreme Court said that, quote, normally the way we find state action is to ask whether the state has encouraged or influenced a particular challenge policy. Well, hasn't it here? I mean, by definition, by allowing charter schools to experiment, to innovate, hasn't it given it effectively carte blanche to do exactly what they want with respect to the whole category of activities, including dress codes? No, Your Honor, because if the inquiry were cast at that level of generality, Rendall Baker would have come out a different way. The court in Rendall Baker said the state gave the contractor there a wide range of options to deal with personnel and other issues, but because it didn't compel or influence the particular challenge policy in that case, there was no state action. And I think the reason is because what we're trying to ask at the end of the day is whether this policy is fairly attributable to the state. Okay, but Mr. Streat, aren't you really saying to us when distilled to its essence that the state can create an entity that deprives students of their equal protection rights? You're saying the state has it within its authority to create a remedy that erases the federal constitutional rights of the students who attend it. Isn't that what you're saying at its base? I am saying that the state can charter or authorize or contract with a private entity and that that private entity will not be subject to constitutional claims. I think if you look at the Manhattan Community Access Court case, there the government outsourced the creation of public access channels on cable that have sometimes been performed by the government, and the court said no, the plaintiffs cannot bring a First Amendment claim because there's no private action. The state has not compelled the particular – there's no state action. The state hasn't compelled the particular challenge policy, and public access forums are not – Well, let's suppose, counsel, that the charter school engaged in overt discriminatory activity and with respect to minority students. And the state, knowing that, did not cut off funds, did not seek to take the charter school to court, and just stood by as a passive bystander and did nothing in the face of blatant discriminatory activity. Could that be seen as encouragement, even if it were tacit encouragement, of the actions that the charter school was taking? And would that implicate the state – might that not implicate the state to a greater degree than what we're talking about here? If a blatantly unconstitutional or discriminatory pattern of behavior was known at a charter school and the state did nothing other than wink and blink and continue to fund, and no move to take them to court or whatever, wouldn't that be at least a tacit encouragement so that it would constitute state action? We don't have that here, but might we not have other situations where it would be state action? That's all I'm asking. Yes, Your Honor, I think that's very possible. I haven't seen that type of scenario in the case law, but it's certainly imaginable, as I mentioned in response to Judge Heighten's question, that if a blatantly discriminatory policy were brought to the state and the state says, we're not going to enforce or care about that provision in the charter and it kept on renewing the charter and funding, it's certainly conceivable to me that that would be state action. You'd provide them with an alternative remedy. The state would provide somebody with an alternative remedy, but they would provide contract immunity from claims under the federal Constitution. That's what you're telling us. You have contractually given the private school immunity from 1983C here. One of the 50 states can do that is what you're marketing. I don't think it's correct to frame it as the state granting immunity. I think it's that the state is contracting with a private entity, and a private entity is generally not going to be a state actor unless these very narrow tests set forth by the Supreme Court are met. But they're a public school. They are a public school, but in Jackson versus— In North Carolina, it's statutory or constitutional provision. That's provided by the state in North Carolina. Yes. I mean, that is the designation, but again— At least that's what it says. It means that it's a public school, which I think, if you look at it in the context of the statute, what it means is that it's open to everybody and that it's publicly funded. It certainly does not mean what we traditionally think of public schools to be. It does not mean it's run by a government employee. It does not mean all aspects of it are supervised by the state chain of command. Well, these employees do get state retirement benefits, don't they? The state doesn't give away retirement benefits freely, and they're making these employees eligible for state retirement benefits. Doesn't that make a very loud practical statement of how these employees are viewed? No, I don't think so, Your Honor, because it does say, for purposes of benefits, they are considered state employees. So for other purposes, they are not. I have a question about that, actually. I thought the statute said that they're entitled to retirement benefits only if the charter school elects to participate. So a charter school can choose whether its teachers get these benefits or not, and in fact, the charter school has to make the contributions. They make the payments, not the public school, not the state, not the local school board. Very different than in your normal public school. The teacher gets to choose if they participate. The state makes the contributions. Doesn't that make these pretty different? It makes a huge difference, Your Honor, that it's limited to the purposes of the benefits and that, as Your Honor pointed out, this only kicks in if the charter school elects it and does not provide its own retirement funds. It was viewed as a way to induce individuals to come and choose. You're not saying the charter school pays 100% of the retirement benefits for the rest of the teacher's lives, are you? They're just paying on a funding formula. Isn't that correct? That's my understanding. Yeah, okay. It doesn't make a difference that the charter school, I mean, they get to choose. They can distance themselves from the state and the retirement benefits, or they can make all their teachers subject to it. I mean, do public schools get to have that option, that they can distance themselves from state retirement or not? No, I can't imagine that they do, and I think many charter schools do opt to have their own retirement plans for their own employees, and many let their employees participate in the state plan. And that really gets back to what I was answering in Judge King's question, that the state meant what it said, but the question is, what did it mean when it said public? It did not mean government-run and government with intrusive government. Let me ask a question. We've been dealing with these hypotheticals in a lot of different ways to look at this, and yet the Manhattan case makes it clear that in this analysis of whether this is an exclusive public function, that the government must have traditionally and exclusively performed the function. So when you look at the Rendell Baker case, Rendell Baker, the court makes it clear that the type of education there is to maladjusted high school students. Then in a sentence below it then said, recently the state had not undertaken to provide this education for those students, could not be served by traditional public schools. So when you look at the education that's provided here, and I do it in the context of the tradition, but you've got to look at history. 1868, North Carolina amends this constitution, or at least it acts as a whole new constitution, to provide public education for everybody. It's wonderful until Brown v. Board of Education comes up. I know this, and I know the bar in the state of North Carolina fought that like no tomorrow, not to do that and enacted what I intended, schools under the freedom of choice, planned the whole bit. Charter schools come about. In 1996, these schools comes up. The whole impetus here of keeping it as a public school is to allow for a niche in which you have a public school that's probably not threaded by these so-called federal laws and other things that go on in the process of it. But the purpose of this school, as it states, is to provide a free public education. Not an education in Rendell Baker to just maladjusted students, but a free public education. So how is it that when we look at that traditional function that this school is providing, that this is not a state actor? I mean, we can look at all the other hypotheticals and analyze it from different angles of the different titles, but when we look at the Manhattan test, this traditional and exclusive function, that's exactly what it's doing. It's providing traditional public education free. And as you say, I guess it's open to everyone. It's open by lottery. You can get it. It's just there. And yet the impetus and the purpose of it, now we want to carve out and say, no, this is a private school. How does that not fit within this traditional exclusive test? I think it gets back to the questions about how you frame the function that's being provided. And I think if you look at the Supreme Court case law, take Rendell Baker for example, the court did not say free public education of maladjusted students. It said education of maladjusted students. That's the function that was being provided. Here the function is education of primary and secondary students. The fact that it's free is not the function of it. And I think when you're looking at the North Carolina Constitution, it's important to note that, as Your Honor mentioned, when charter schools came in, they were this unique creature, but the Supreme Court of North Carolina, at least the Court of Appeals I know in a case that's cited at page 26 of the panel opinion, says that the charter schools were in addition to the traditional public schools that the Constitution required that they provide. So they are this unique creature that is outside of the public school system in many respects, inside the public school system in limited respects. Let me ask you one question. Do they do the same thing that the public schools do, provide free public education? I guess you could say yes or no to that. They do provide the same function that public schools provide and they provide the same function that private schools provide. Is there a function that's traditionally undertaken by the state, at least from the 1868 Constitution, the provision of free public education? Not education to male adjusted students as in Randall Baker, but to everyone, free public education. Is that not a traditional function under the state Constitution? I think it's a traditional function as of 1860, yes. I think the fact that there's no public free education before that point is pretty strong evidence that this is not a traditional and exclusive state function. That's the second adjective. Just on that, I think North Carolina has had some form of a public education since 1840. It's the 1868 Constitution that opened up the free publication to all public education, all. My question only, it's very simple, is that a traditional function of the state to provide free public education? I think it is a traditional function and I think the relevant question under Supreme Court case law is whether providing education is a traditional and exclusive state function. I want to point out that the First Circuit and the Ninth Circuit both addressed this precise question that Your Honor is asking. They have the North Carolina Constitution. They have very... It's law from the Supreme Court of North Carolina interpreted it. You know the case that's going on in North Carolina now that's dealing with public education and what is required to be done there. I don't know if you can look at another state and say that's North Carolina. This is state active and the Constitution of the state is where we first look to. Is it not? Yes, Your Honor, but in both of those cases the state Constitution required the provision of a public education both in Arizona in the Ninth Circuit case and Maine in the First Circuit case. They contracted with a charter school operator in the Ninth Circuit. In the First Circuit it was with a local private school to provide education that was open to all and that was free. And that court I think faithfully... Those courts faithfully applied the exclusive and traditional public function test and found that those states that the education provided there was not a traditional and exclusive public function. Your Honor mentioned the North Carolina case is construing this question and I do think it is clear from those cases that you have the constitutional mandate which is a uniform system of public schools and then you have the charter schools which are by design not uniform and to encourage innovation and to be outside of that system in significant respect and that I think lines it up with the First and the Ninth Circuit cases. Thank you so much, Mr. Street. I appreciate that. Ms. Sherwin? May it please the Court, Galen Sherwin with the American Civil Liberties Union for the Plaintiffs' Appellees. The issue on which the Plaintiffs' Appellees sought rehearing is a question of first impression. Whether a charter school that the state of North Carolina expressly designates as a public school is subject to the same constitutional constraints as traditional public schools in setting school disciplinary policies. Here, the uniform policy requiring girls to wear skirts to school ostensibly to promote chivalry. The answer here must be yes. This is dictated by West v. Adkins and by straightforward application of the four-factor test set forth by this Court in Goldstein v. Chestnut Ridge as dictated by the state of North Carolina law. All four of which factors under that law point to state action. Counsel, how would you characterize the relationship between CDS and the state? It's basically contractual, isn't it? Your Honor... By virtue of the charter? The charter school exists by virtue of the state charter school authority Well, sure, but the state draws off contracts, too. But I'm saying that the charter makes the relationship between the state and the charter school in significant respects a contractual one. Isn't that correct? There is a contract in the form of a charter that is granted to the charter school, but that charter... What I'm suggesting is where we're talking about contractual relationships. Those relationships can be regulated in many, many ways. One is through the contract itself, through the charter itself and the incorporation of non-discrimination provisions. Another way is contractors can be regulated by regulations of all kinds. Contractors can be regulated by state statutes. There are dozens of ways for contractors to be regulated by, but we don't seem to regulate contractors in contractual relationships through constitutional doctrines and through here an expanded concept of state action. There are so many other means of regulation, statute regulation, contractual remedies, and all the rest, that they would seem to me the way we normally regulate parties in a contractual relationship with the state, not constitutionally, because what you're going in the direction of is saying that by virtue of a contract, the contractor becomes a state action. That's quite a far-reaching proposition, isn't it? It is not, and for several reasons, Your Honor. First, because the nature of the contract itself designates Charter Day School and all charter schools within the state of North Carolina as public schools that are subject to the Constitution and civil rights laws. That is on the face of the terms of the contractual relationship, as well as the statute itself, which situates charter schools squarely within the universal system of free public schools that the state is constitutionally obligated to provide to students across the state, to all comers free of charge. So this is not a typical contractor-contracting relationship, as the defendants would have it, similar to somebody who's contracting with the state to build roads or dams. The function for which Charter Day School is contracted here is the provision of public education for free to all students in the state of North Carolina. Yes, what the state is seeking to do here is to provide a choice for students and to provide different options for students, and in order to do that, it creates some diversity, some room for innovation, and some room for diversity and inventiveness and all the rest within the public school system. And then what you're doing is you're taking this idea of state action and making it into something very elastic and expansionary, and negating the whole value of the charter school experiment to begin with, because if you take the state action doctrine to the point that it covers each and every little function, regardless of the degree of state involvement, aren't you subjecting to a stifling orthodoxy the schools that the state of North Carolina established in order to achieve educational diversity? You're negating the whole purpose of the experiment. Your Honor, I'll start with the purpose of the experiment, because that is set forth in the statute itself that says that the purpose of the Charter School Act is to create alternatives for families to existing schools within the public school system. So that is the purpose that we see here. The charter schools are situated squarely within the public school system in the state of North Carolina. Secondly, for more than a quarter of a century, North Carolina families have, including the plaintiffs, have exercised their choice to attend those types of charter schools that offer unique educational offerings on the understanding that they enjoy the same constitutional protections as their peers in traditional public schools. And that's in reliance on the state's explicit guarantee that those schools are public schools and that their function is to provide free private health. Counsel, doesn't that fact, I know it's hard to see, but you started off by talking about how West v. Atkins was one of the cases on which you rely. And I think that's an interesting case and one that's in some ways helpful. But what you just said seemed to point out the difference in that case, how there the plaintiff was captive literally as a prisoner and had no other choice. And you just emphasized the choice that your clients and others had made. And generally that might not be an issue, but that seems pretty clear that that was important to the Supreme Court. And that's not just me saying it. In the opinion, they talked about how the physician there was the only available choice. Do you acknowledge that's a difference between West and this case? I do not, Your Honor, because here students don't have a choice not to attend school. They have to attend school, and if they cannot afford to attend a private school, they have to attend a public school. The fact that there are different public schools available within an overarching free school choice regimen that the state has set up, there are several types of public schools that the state statutes recognize, including magnet schools. Surely a student attending a magnet school would not have to forfeit their constitutional rights as a condition of attending that school merely because they could pick up and attend a different school. Sure. That wouldn't be a private entity running the school, so you wouldn't even have the state factor question. But my point is if West is a case that's central to you, the very terms the Supreme Court used make the fact that there is available choice, unlike the physician in that case, available, central to that case. Well, Your Honor, I would disagree, and I think that the analysis really follows from the factors that this court has articulated in cases like Goldstein v. Chestnut Ridge, where really the focus of the analysis is on a specific conduct at issue. And in designating the charter schools in the state of North Carolina as unambiguously public schools, the state was making a judgment twice here. Other states have set up their public school systems differently, including the state of Arizona, which in setting up its charter school statute specifically exempted charter schools from the state's constitutional mandate to provide free public schools and set them up as an alternative parallel type of school system. That's another reason that the cabinet's decision is not on all fours here. I want to come back to a point that my colleague mentioned about creating a circuit split. This, a decision for plaintiffs here in this case, the charter day school was acting in a state as a state actor, would not create a circuit split. The different outcomes in those different cases is exactly what you would expect from the careful application of a multi-factor test to different states' laws, different states' histories, and in many cases different conduct, including employment conduct. And here, the conduct that's at issue- Counsel, can I ask you- sorry, I'm over here. I know it's hard. Can I ask you a hypothetical under the- so the state constitution permits providing education by other means. And imagine the state of North Carolina decided that they wanted to provide vouchers for that education by other means, the last clause of the constitution. And they provide these vouchers to students, and a- gets to choose the school they go to. A student chooses to go to a private school. You can probably see where we're going here, right? And that private school, to take Judge Hyten's example, bans black arm bands to protest the Vietnam War or any modern war. Is that a- is that state action, given that that is the state- the state function there would be the state providing free public education through vouchers, right? I mean, that's the free public education that is required to provide under the constitution? It would not. And help me understand why. I mean, I get the answer's no, but why? Well, to start with, under the Goldstein factors, the state does not view private schools as public entities. They are not viewed as private- as public schools in the same way that charter schools are here. So that factor is completely different. The level of regulation of those schools is entirely different. The state only subjects private schools to a very minimal level of regulation. So it's an application of all of the factors. And so in that- in that scenario, though, then- so if that- if that private school didn't just violate Judge Hyten's example, but, you know, each of the examples that my colleagues have given of absurdly offensive conduct by a school, the fact that the school- that the state chose to use vouchers to fund schools that did those things wouldn't create constitutional violations. It might create lots of other problems under statutory provisions. But in that instance, the state could fund those schools in order to get around their constitutional obligations as long as they did it through a voucher contract instead of a charter contract. Is that right? I think it depends on the scope, right? Of course, if the school were to do that as to all of its public school system students, then perhaps the answer would be that that would. Why would that make a difference? If it were every single student in the state, then the state would be essentially washing its hands of its obligation to provide any free public education through the public school system whatsoever. But the Constitution permits that, right? The Constitution very much permits that, right? Because it requires a free public education unless educated by other means. But the Constitution also requires the state of North Carolina to establish a uniform system of free public schools. And there's actually a state case, which is called Hart, which upheld the constitutionality of the voucher system under North Carolina law. I don't think it's cited in our brief. But in that case, the court held that in authorizing the voucher system, the state was not fulfilling its obligation under that clause of the Constitution. It was merely providing additional funds. All right, so as long as it's not 100%, so as long as they have a choice. Again, this goes back, I think, to Judge Clauterbaum's question. So as long as the parent or the student has a choice between the traditional public school and using a voucher, then the state can in that way use a contract to abdicate its sort of constitutional obligations, if you would, and sort of offensively violate the Constitution, as my colleagues have suggested. I mean, I think, Your Honor, the application of the Goldstein factors, again, is different in multiple respects with respect to the scenario. But my point is, you agreed that that would not be state action, and therefore that contract would allow the state to, you know, ban, or allow the state to fund schools that ban black armbands and all the other parade of horribles that we heard about. The North Carolina Supreme Court has said that the state is permitted constitutionally to do so. As to whether, you know, in every case that would mean that there was not state action, there could be a scenario in which it was so extensive that the delegation was so extensive. Or there was state coercion because there was a statute that required it, as your colleague pointed out. Right, right. Thank you very much. You're welcome. To pick up on Judge Quattlebaum's point about when Judge Quattlebaum was talking about West v. Adkins and the fact that there was no choice in the West v. Adkins case, and here there's a choice, and the Supreme Court has indicated that this whole factor in choice is an important thing to preserve in education, and that the factor of choice is one of those things that leads in the direction of the fact that it's providing choice is a constitutionally desirable route. And so I'm asking about parents who make the decision to attend CDS precisely because they really like things like the dress code and because they think that the dress code and the traditional curriculum and other traditional values are provided. And do we not negate it? Those parents, their values may be different from yours. They may be different from mine. Many parents wouldn't want that kind of education for their children, but other parents would like that education for their children. And aren't we negating this core value of choice by saying, well, people who sign up for this CDS education because of its curriculum, because of its dress code and everything, aren't we just taking their values and nullifying them and nullifying their right to choice by taking the state action doctrine and having it extend function by function to every little thing the CDS does? A couple of answers to that, Your Honor. It is not the plaintiff's position that state action doctrine would extend to everything that CDS does. What we're talking about here is the... Well, what would it not extend to? What would it not extend to? Courts have looked to other forms of conduct and found that those do not constitute state action, such as the employment decisions that were at issue in the cabinet decision. How would that... Counsel, how would... If the issue... The rationale is that it's a part of the public school system. That rationale would seem to me not limited by function. And I think that's the problem. I mean, there's two problems with that. The courts that have addressed that have not extended and put the adjective free in front of the analysis. But beyond that, I mean, that's going to apply, it seems to me, to every function and largely override the coercion and the state, at least, encouragement, that requirement, that it seems hard for that to say, here, you have that. So if that requirement exists at all, and the Supreme Court has told us over and over it does, that the state must either compel or encourage, how do we do that when the state is so hands-off to the operation of charter schools in North Carolina? A couple of answers to that, Your Honor. The Kavanaugh decision is a good place to start there because the court was very careful to emphasize that the state action inquiry may be found as state action as to some action on the part of the entity but not others. So there is a very tight focus on the specific conduct at issue in the case, and here again, that's policy affecting students. And when the courts have looked at that question in the context of challenges to policies that relate to student education directly or policies that educate students, they have found that there has been state action, and they have distinguished the Randall-Baker case and the Kavanaugh case on those grounds. Second, with respect to the... I know you have a second point, and I want to let you get to it, but you pointed out rightly, I think, that this is a state-by-state analysis, right? So I appreciate that, I guess maybe some district courts, is what you're saying, have found that there's particular policies of the school and how they educate, but talk to me about North Carolina and this policy. You're right that we have to focus on the particular function and its address code. Talk to me about why North Carolina has encouraged the school to have a dress code like this, and why that makes it state action. The state of North Carolina has delegated to the school the exclusive and historical state function of providing education to students. It exists by virtue of the state's granting it the charter, and it continues to exist at the pleasure of the state in reauthorizing its charter day to day. With respect to the flexibility or level of regulation that the state has imposed on charter day schools with respect to this conduct, the state has made very clear that the flexibility of charter schools to experiment with different educational techniques or curricula, that flexibility ends where discrimination begins. That is on the face of the charter itself, which specifies that the charters are required to comply as a contractual matter with the Constitution. You're absolutely right about that, but are you saying the fact that the charter requires, because the charter requires the school to comply with the Constitution, which it does, so it protects these students' rights just as much as students in other schools, the fact that the charter requires them to comply with the Constitution means that they are state actors and they violate the Constitution? That is one factor that is significant in the analysis. So that would apply to everything that the school does, when it fires a teacher for an impermissible reason, anything the school does that might violate the Constitution because the contract includes that, they become state actors for all purposes? No, Your Honor, because again, that is one factor in what is a totality of the circumstances test, and so you have to look at all of the factors that Goldstein constructs that you consider here. With respect to level of regulation, for example, there is a much lighter degree of regulation into things like personnel policies. Ms. Sherwood, doesn't the North Carolina law require charter schools to develop student codes of conduct, and this dress code is a part of the student code of conduct? Implementing the dress code in the first place, the school's authority comes from North Carolina law, so it is a state actor with regard to this dress code. That's exactly right. Do they actually require them to create a dress code? No, they do not require it. There are charter schools that don't have dress codes. Yes, there are public schools across the state that do not have dress codes. What the law does, that Judge Thacker is referencing it, is it requires public schools to promulgate clear codes governing student conduct, subject those codes to constitutional requirements and limitations, and delegate to the public schools the authority to set the scope and the boundaries of those codes of student conduct. Because here we're talking about a code of conduct, the uniform policy is contained within the code of conduct at CDS, that is done on the same exact footing as if CDS were a traditional public school, because that delegation of authority is done on exactly the same terms between traditional public schools and charter schools. And with respect to that delegation of authority, I want to come back to one point that my colleague made about the coerced by element here. This court held in Goldstein that when there's a delegation of state authority of a traditional and exclusive public function, there need not be a nexus to the specific decision at issue in that case. There it was, again, a personnel decision about folks at a volunteer fire department. This court held that the state didn't need to have had a hand in that particular termination decision or that particular personnel decision in order for state action to be present. That's because the nexus between the actual conduct that's being challenged doesn't need to be as tight in cases where the state has delegated those day-to-day decisions to the entity in question. But there is no North Carolina statute regulation policy regarding dress codes. There is not regarding specifically dress codes, but there is regarding student codes of conduct, of which the CDS dress code is not required. The issue here goes to the dress codes in particular. That's what's before the court. That's correct, Your Honor. And again, the flexibility that is offered to charter schools to create, I want to come back also to a point that was raised earlier, the flexibility to create different types of educational philosophies or different types of traditions involving, like charter day schools, a traditional values school. Charter schools are still free to do that. This does not impinge on that. Imposition of Section 1983 does not impinge on that because charter schools are already subject to constitutional requirements under their charters. So they're already set within the same bounds. This doesn't change the bounds of what charter schools are permitted to do or not do. How can you say it wouldn't change the balance if we were to invalidate the dress code and say that that was a function of state action? How would that not change the balance? I don't understand. I'm not sure I understand the arguments you just made. Well, the state of North Carolina... If I wouldn't, I guess what I'm saying, if I wouldn't just constrict charter schools to a pretty phenomenal degree, because if they're not permitted to do this dress code, there would be a whole range of student conduct that they would be subject, that they would become state actors with respect to it. My colleagues earlier were talking about very offensive discriminatory hypotheticals in one direction, but the hypotheticals exist in another direction, do they not? That is, if the CBS dress code is ruled to be a matter of state action, doesn't that implicate virtually anything that charter schools are trying to do, and particularly anything that affects student conduct or conceivably student education? I don't see the limiting principle here. If it's a state actor here, then charter schools are state actors across the board. Isn't that a problem? Where do you stop with this? I think that's what the Goldstein factors are supposed to answer, that there are distinctions based on different states' laws, different states' regimes in how they've chosen to establish charter schools. So a finding here that this particular type of conduct engaged in North Carolina by a charter school would not necessarily mean that all charter schools across the country would be held to be state actors. It's a state-by-state analysis, and it's also a conduct-specific analysis. I think I mentioned earlier, courts have not found entities engaging in education to be state actors for all purposes. They have drawn distinctions based on the type of conduct at play here. I think part of the outcome here that you're talking about in terms of the limiting principle, the state here has made a decision that students should not have to forfeit their constitutional rights when they choose to attend a public school that's set up under the state's school choice system. And that really brings me to... Is the traditional function, the traditional exclusion function here, providing a free public education, or is that function in stealing and enforcing address codes? The state has actually delegated both. One is a component of the other, right? So it has delegated the traditional and exclusive state function of providing free public education. And I would say that in specifying that public schools, including charter schools, establish school disciplinary policies that are clear and that comply with the Constitution, the state has further delegated that specific function with respect to discipline codes. And that's because of the weighty authority that is being granted to impose discipline over students who attend school under compulsory education laws. Why wouldn't we look at, kind of following up on Judge Wynn's question, why wouldn't we look at the exclusive function? One argument is that it's education generally, one that it's free public education. Why here wouldn't it be innovative alternatives to education? And that's what the charter schools are, and that would definitely not be an exclusive and historical state function. Your Honor, the state has decided how it wants to authorize innovative education and has chosen to do so within the public school system. That's stated in the charter school system. I'm sorry to interrupt you, and I agree with that. And I think you're right. It did do that, but that doesn't mean that that's the historic and it didn't even do it to the mid-'90s. So it couldn't be the exclusive and traditional function if we're looking at that. All I'm saying is you can pick your description to determine the outcome. And I think that's what our court in the Citadel case said you can't do. I think that's what certainly the Ninth Circuit said you can't do. And it seems like how you frame the specific function can make all the difference, at least on that factor. And, you know, I get it that you're advocating for the one that best helps the argument. That's what advocates do. But there are a lot of other ways to look at it, and I'm just, you know, I think that's an important issue. Well, I think, Your Honor, that the standard we are advocating is actually consistent with what the Supreme Court and this court have done in past cases. So, you know, in the Rendell Baker case, it was pointed out earlier that the court did not look at education in general. It asked about whether provision of education to maladjusted high school students was the right focus of the analysis. Similarly, in the Halleck case, the Supreme Court declined to widen the lens to ask whether provision of a public forum for speech was the state function at issue and instead asked whether provision of public access cable was the traditional and exclusive state function. But here... Aren't publicly funded alternative forms of education traditionally exclusive? As far as I can think. And it's the charter schools that are recent. Aren't publicly... In other words, the publicly funded alternative forms of education, isn't that a traditional type of exclusive, a traditionally exclusive means as opposed to charter, which is recent? I think there have always been different ways in which states have chosen to provide a public education. In other words, that predates charter schools. Right. That's absolutely right, Your Honor. And I think that, you know, that sort of brings me to the Logeodice case in Maine, which my colleague referenced. In that case, there was a distinct history in Maine where the state had, because of its largely rural and sparsely populated population, had chosen to contract out much of the state's public education traditionally. I think you can look at North Carolina and look at the magnet schools and find that example. Right. The magnet schools have existed here for some time. They are also like charter schools situated within the public school system and subject to the same constitutional constraints as traditional public schools. What's the status of the Title IX claim in this case? I ask opposing counsel the same question. Yes, Your Honor. I mean, we petitioned this court on the question that we've mostly been spending our time discussing today, the state action question. The plaintiff's position is that this court should adopt the reasoning of the panel decision in the Title IX claim. Both claims are before the court today. It's my understanding that the court has a blank slate because the panel decision has been vacated, but we would argue that the decision of the panel on the Title IX question was correct and should be adopted by this court. And I would be happy to talk more about it, but I see my time is far past. Thank you, Ms. Sherwin.  Thank you, Your Honor. I want to talk a lot about choice for one thing, but I want to start with the contention that the court would not be creating a circuit split here if it somehow distinguished the employment cases. Counsel, I hate to interrupt over here, Judge Harris. I do apologize for interrupting, but I was hoping that you could clarify for me something that came out of your earlier colloquy with Judge Wilkinson about, would there be state action if a blatant constitutional violation were ignored by the state, if the state, in the face of a blatant constitutional violation, did not pull the charter? And you suggested that might be state action. And so my question is, do we have to sort of think about the merits? I mean, if I think this is a blatant constitutional violation, does that need to be part of my thinking in the state action context? I don't think we know. I'm not prepared here today to answer whether the sort of scenario Judge Wilkinson suggested would be state action. Okay, so you were not saying that would be state action? I think it's conceivable that the Supreme Court or maybe this court could construct the sort of willful blindness equivalent to the compelling or encouraging. But to get to your question, Your Honor, I do want to answer whether the merits conflate with this issue here. And I think the answer is no on this record, because in this record, we don't have any sort of evidence as to whether this issue was ever raised with the state, whether the state ever put a stamp of approval on it in any meaningful way. It's really the state knows about this litigation, right? It's not that the state is unaware that this case is pending. They know about the skirt policy. They know that it's been defended on the fragile vessel ground. So I think I probably could take judicial notice of the fact that the state is aware of this. And again, I just feel that some of the discourses sort of assume that this is not a case of a blatant or an offensive constitutional violation. And so what I want to ask you is, does that presumption matter for your argument? If I disagree with that, does that put me in a different position? I guess no, I don't think it matters, because as I mentioned before, I don't think there's evidence in this record of the sort of state approval. There's not even approval, much less compulsion or influence here. There would have to be some, to even create this sort of willful blindness doctrine, I think there would have to be some very strong evidence, not just of state awareness, but the state approving of it. Obviously, we don't think the policy is blatantly unconstitutional. We think that's why the state has left it in place, because it has a sort of flexible oversight that recognizes that there are- You think it's a de minimis constitutional violation? Well, as we've said out in our briefs, we don't think it's a violation at all. Most courts have upheld these types of dress codes in the past. But I do want to turn back to the state action question, and I think it's important to point out that the court cannot just limit Rendell Baker to employment cases and say it has not created a circuit split, because two circuits have expressly rejected that argument. Lodge O'Dee says Rendell Baker cannot be limited- But the facts are so different. I mean, it seems to me, Mr. Street, what you're asking us to do is take a bottom line holding and insert your facts into the bottom line holding without the required analysis, and we can't do that, and surely you agree. Well, I don't think that's the correct characterization of our position, Your Honor. We think those cases are on materially identical facts, and both of those cases- You're saying an employment case is the same as the provision of a core function, of a philosophy of respect and traditional values, that a mission to teach children these things is the same as whether a school violated an employment contract? That's a whole lot different. Well, the question of state action would be the same. It would be whether the function was traditionally and exclusively reserved to the state. But I was trying to make a little bit narrower point about the cases that did involve student discipline, the Lodge O'Dee's case and the Robert S. case from the Third Circuit. Both of those cases addressed this precise argument. I'm not talking about the tangential facts in those cases. Both of those cases addressed the argument, well, isn't the very question Your Honor asked, well, isn't an employment case way different from a student discipline case? And those courts both said no. Those are both governed by the traditionally and exclusively state function test, so the court would be creating a circuit split if it tried to limit based on that fact. But these were contractual arrangements like Robert S. was a contractual arrangement where the city paid a small portion of the tuition for any student placed at this private residential school for juvenile sex offenders. Again, this is a niche provision by contract to a private institution. That's different than a public school. I think the Lodge O'Dee's case is directly on point because there was the outsourcing of public education. But I do think it's also important to point out, Your Honor, that the distinction that I believe Your Honor is trying to draw between a contract and a charter has just flatly been rejected by the Supreme Court in the Manhattan case. The court said the granting of a charter or a government license to operate some public function is not state action unless that function is traditionally an exclusive state function. Remember perhaps the San Francisco versus the U.S. Olympic Commission case. That was a congressionally granted charter to operate the public function in that case, and the court said that was not state action. Counselor, your argument... Counselor, excuse me. I defer to whoever was speaking. Go ahead. So I was just going to say that I have a feeling that your argument has this a little bit of a feel of a shell game, and let me explain why. So I understand that Charter Day School itself is not a separate legal entity. But if counterfactually the school itself were a cognizable legal entity, would that school be a state actor? No, Your Honor. It would be just like the public utility in Jackson. But despite being designated by state law as a public school, it would not be a state actor. That's correct, Your Honor. Your Honor, I think if there's any clear teaching from the Supreme Court's case law, it's not the label that controls. You can look at the Brentwood case. It's very clear about that. The state cannot designate something public or private and thereby control the outcome. Well, actually, thank you for bringing that up. Because are you aware of a single, outside the public defender context, which strikes me as extremely different, are you aware of a single U.S. Supreme Court decision that has taken an entity that the state designates as public and said it's not a state actor? Not at the Supreme Court level. Are you aware of a single decision of this court before the panel decision in this case that had ever said that? I cannot think of one off the top of my head, but I think it's important that Your Honor mentioned it was a counterfactual question and that the state specifically designated – and I don't think it turns on whether it's a juridical entity or not, really. It's that the school is public, but the state has opted to have that operated by a private entity to take it outside of the traditional public school chain of command. Now, I think when we're talking about choice, there are really two choices that are important here. First of all, this choice the state made that I just mentioned to you. Florida and Texas allow charter schools to be created by public entities. Local school districts can oversee charter schools. That's one way to do it. That may very well be a state actor in that instance, right? But where the state decides to put it under a private entity with a private board and then give that private board complete plenary authority over the operations of the school, then we have the case falling outside of the state action doctrine. Counsel, can I ask you a question that I touched on with your estimable opponent? Sure. I am concerned about the implication of this decision for the millions and millions of parents who are not fully satisfied by certain aspects of contemporary education. And they want for their children a more traditional way of life, not only with respect to a dress code, but also, for example, with respect to curriculums. They may want the classics to be emphasized. They may or may not want sex education taught in schools. They may, for whatever reasons, want a different kind of option for their children that is materially different in some educational aspects from what the public schools presently provide. And I want to know what we are doing to the values that these millions upon millions of parents have for their children and the input that they ought to have in terms of educating their children. And so I'm concerned about the implications of this case for the rights of those parents, which the Supreme Court has often said in cases like Pierce v. Society of Sisters and Meyer v. Nebraska and the rest, that parents do have an interest in the kind of education their children receive and they can't all provide, or they can't all, for reasons of location or for reasons of finances, provide private school education. But what does it do to the choices of those parents and to the values of those parents and to the values of those families? If we expand the state action doctrine to decisions and areas like this, could you just respond to that? Your Honor, I think you're right to be concerned. And the purpose of the state action doctrine is to preserve a robust sphere of individual liberty that allows parents and others to make these choices in the private sphere. Okay, but Mr. Street, excuse me, aren't you saying that parents can surrender the constitutional rights of other people's children? In other words, parents or their own children, that parents can take a situation saying, I want my child to go to this segregation academy, effectively. And I'm not saying CDS is that, but I'm saying parents can say, I want my child to go there. And then what you're saying is everybody else's children are also subject to the segregation because of these parents' decision to form this kind of compact with the state as a part of the state charter? Well, Your Honor, I'm afraid that question just begs the answer, begs the question of whether this is a state act or in the first instance. Again, I think there's no doubt that a private school could have this policy, and we wouldn't say the parents were surrendering their constitutional rights by sending the children to the private school. So it all depends on the state action question. I think Judge Wilkinson's concern doesn't just go to parents who are of traditional values. There may be progressive parents out in North Carolina who have or wish to create a progressive values charter school. Do you believe that a decision that we render under this narrow question here would have that implication? Do we need to go there? Are you arguing that position here today? I thought it was pretty narrow in terms of what you were arguing here today. Are we dealing with all those other hypotheticals that could happen, or does it have that implication? If this court were to accept the position advocated by my opponents that the education here is traditionally an exclusive state function or this is a West type of delegation, then the charter schools would be state actors for virtually every purpose under their theory. And I think that would very much open up these private volunteer boards and these private nonprofit corporations to fee-shifting litigation. They would be dragged into court over every single educational policy that somebody doesn't like, and I think that would harm everybody across the entire philosophical spectrum. I thought it just limited to saying you couldn't do certain things like discriminate and violate certain laws to the discrimination of certain students. I didn't know it went so far as determining what curriculum you would have. Does it do that? I don't think the court can limit this only to discrimination cases because once an actor is a state actor under the theories that the plaintiffs have advocated, then it's open to all manner of constitutional claims, First Amendment, Fourth Amendment. But is it not possible to provide an alternative traditional or progressive education consistent with the Constitution? I also am wondering, what does this parade of horribles look like? What other unconstitutional things need to be done to provide an alternative either traditional or progressive education? Of course, we don't think this is unconstitutional. We don't think charter schools will do things that are unconstitutional. The problem is that it's very easy to file a Section 1983 lawsuit and drag the Board of Directors into court. And this goes back to the questions of Judge Wilkinson and also the argument of my advocate, of my opponent, that the fact that the charter already mandates nondiscrimination somehow means that a decision to find state action would not alter the balance. The key there is that the charter mandates nondiscrimination and the state is the one that can enforce that. And these girls are still required to wear pants? I'm sorry, Your Honor. And these girls are still required to wear pants? Well, Your Honor, I think that is a question that could be presented to the state. What is the purpose of requiring the female students to wear skirts? I'm sorry, skirts, excuse me. Skirts. What is the purpose? Well, I think that question has been addressed in the context of the overall sex-specific dress code, that it's part of an effort to instill discipline, order, and promote education. How does requiring the female students to wear skirts instill discipline and order? Your Honor, that has been addressed in the record as part of the dress code as a whole. Now, I will say that... So I want to hear your answer then. It's been addressed. Surely you can answer it. How does requiring the female students to wear skirts instill discipline and order? I'm suggesting to you there is not a lot of record evidence that that particular provision has any justification. It's separate and apart from the dress code as a whole. But what I would say is that the sex-specific dress code, including the requirement that Your Honor mentioned, I think dress codes have always been viewed as a reflection of the physical differences that exist between the sexes. Isn't part of it in what's in the record to preserve chivalry and respect among young women and men in the school of choice? Your Honor... Isn't that part of it? And also in wearing, it says from the school, in wearing skirts the dress code models the difference, the difference between what, the difference in what, and that we expect the proper treatment of young ladies. So it models the difference in the males and females. Is that what it models, the difference? I think that's right. I think dress codes have always been thought to model... What's the difference? What, why? Well, what Justice Ginsburg told us in the United States versus Virginia is the physical differences between the sexes are enduring and there's something to be celebrated. What does that have to do with wearing a skirt? I'm sorry. Go ahead. What is the physical differences between a man and a woman? Where's the nexus between being a woman and wearing a skirt as opposed to a man and wearing pants? Your Honor, I think that... Where's the function of the human body that speaks to that? I understand that, and I'm not going to tell you there is a specific nexus in that way. What I'm going to tell you is that dress codes have been viewed, sex-specific dress codes have been viewed by the law as reflecting those physical differences, including the EEOC handbook, which expressly endorses this type of policy, a skirt policy for women and a tie policy for men. That's a good question. What are the physical differences? That's all you ask. You keep saying there are physical differences. What is it about a skirt? I'm intrigued to hear this answer. I really am. I really want to know. What is it about wearing a skirt that reveals a physical difference, that it's about a physical difference, other than going to aesthetics? If that's where you're going, is that what you're talking about or what? I'm not understanding. Most males and females have legs, and legs are exposed when the females wear skirts, and you would think exposed legs might do, or covered legs might do more to help instill discipline and order. It's a fair point, Your Honor. I think that in this case, the rules do allow wearing of leggings and that sort of thing, which allow those interests to be protected. But I think, getting back to Judge Wynn's question, I'm not going to tell you that there is a specific linkage between the physical differences and a particular dress code policy in this case. What I would say is that there's a reason dress codes that are sex specific have long been accepted in American law, including the EEOC, including the Plaintiffs' Counsel in Bostock, telling the court that that was okay, and the reason is that those reflect physical differences. Well, this court, Counsel, this court recently upheld a sex-specific dress code ordinance in Ocean City, and that was a sex-specific dress code. Now, it wasn't in an educational context, but it was a sex-specific dress code, and those differences, if you prefer, they were reflected in the decision in the Ocean City case upholding the dress code. That's right, Your Honor. I think that's a very good example. But under your logic, if girls were required to wear bikinis to reflect their natural beauty and traditions and everything else, there would be no state action. Then the girls would simply have to wear the bikinis, and there's nothing that could be done unless they went against the Charter, right? Well, that would go against the Charter, Your Honor, and so I'm quite sure that policy would be immediately revoked and the Charter would be terminated. Yeah, but the girls would have no constitutional remedy. They'd have to march in with their bikinis every day, wouldn't they? Subject to the caveats that I've given, that would not be state action. I agree with that, but that would violate the Charter and I can't imagine that the Charter would not immediately be revoked in that instance. And, of course, that's our principal submission here is that by enforcing through the Charter and by enacting a policy whereby students have expanded choice to choose a charter school, to choose a public school, or to choose a private school, we are far outside of the system of delegation that is at issue in West where the prisoner was a captive of whatever medical treatment that the state had to provide. The Supreme Court in Manhattan limited West to one footnote and said, West does not apply because there is no constitutional obligation to provide public access channels. Just so here there is no constitutional obligation to provide charter schools. So West does not apply. Thank you, Mr. Street. Ms. Sherwin? Thank you. I'd like to focus on two points. First is the point about the impact on parents that Judge Wilkerson raised. The impact on parents here is actually great, but I think that it is different than perhaps what the judge was pointing to. The impact here is that the state has guaranteed to North Carolina charter school students and families for decades that they are attending a public school, and like public school students, they have access to constitutional protections on equal footing. To rule that CDS's actions here were not taken under color of state law would give lie to the state's guarantee and would tie the hands of states to structure their school choice systems as they see fit. Now, my colleague's admission that the scope of the constitutional protection in question doesn't determine the outcome here. The analysis is the same no matter what. I think it's failing because what the defendant is saying is that regardless of whether there's a blatant constitutional violation, it does not matter because it would already violate the charter, and the charter could be enforced through the state. And yet at the same time, he argues that subjecting charter schools to liability under Section 1983 would alter their flexibility. They either have flexibility or they don't. They're either subject to the Constitution or they don't. The only difference here is whether they can be held accountable in a Section 1983 action. But Counselor, that kind of cuts both ways too. I mean, you emphasize that the charter has the constitutional protections, which effectively guarantee the rights you say your clients are violated, albeit a different mechanism. It's going via the third party contract claim you assert in this very case or the state enforcing it. So that, I mean, I understand your argument, I guess, but the flip side of it is that you have the exact same remedies through that other alternative, correct? They are not the exact same remedies. But legally they are. The existence of other paths to obtain redress has never been part of the analysis as to whether state action exists. It may be in other contexts like Diven's, right? But in the context of state action, the fact that there may be a state parallel state claim that could be brought or a contract action that could be brought, those are irrelevant. And the court actually reached that in the Brentwood Academy decision. I think legally you're right, and I'm not suggesting the fact that there are other alternatives that makes a difference in whether there's a state act or not. But if we don't have a state act, it means that the concerns you have can be enforced that alternative way. It's not like these issues are without a remedy. The situation that Kenan just talked about would be in addition to being subject to a third-party claim, and, you know, good questions, tough questions about the actual purpose of this one. If a third-party beneficiary claim or a state charter claim might have to meet the standard of U.S. versus Virginia. So those all, you know, it's not like this decision that there's not a state act or doesn't allow those tough questions to, you know, to have to be answered under that theory. I agree that the charter school, in signing the charter, agreed that it's subject to the Constitution, and therefore those remedies would at least, you know, conceivably exist. I will point out that, of course, the defendants have argued that we do not, that plaintiffs do not have a third-party beneficiary claim that's viable that they could pursue. But I think that the history of 1983 is really the more important thing here, that 1983 was enacted in order to provide real accountability when states were not doing their job in enforcing or, in fact, were perpetrating discrimination. And so stripping students in charter schools, not only in North Carolina, but potentially given the impact of this decision potentially across the country, would really be stripping them of equal access to the right to vindicate violations of bedrock constitutional rights. And some of the questions that this court asked earlier today really do get to that with the hypotheticals that were posed. And all those – Counsel, let me – one thing that we may have overlooked here is that we are dealing with independent corporations. We've been talking a lot about Charter Day School, but there's also the Roger Bacon Academy. And the Roger Bacon Academy is the one that's managing all the schools' day-to-day operations, and the Roger Bacon Academy is the one that enforces the school rules, regulations, and procedures. And its shareholders and management are entirely separate from CDS. But I'm wondering if the presence of two independent corporations and the fact that the – of RBA's role, does that create an even greater degree of separation of the dress codes from the state? I mean, the implementation, both the specifics of it are adopted by CDS, which is one independent corporation. And the implementation of it seems to fall to the Roger Bacon Academy. And these two independent corporations and this particular structure of this arrangement, wouldn't that – these questions of matters of degree and a totality of the circumstances you've been stressing throughout your fine argument, but I'm just wondering why part of the totality of the circumstances wouldn't be the existence of these two independent corporations that seem to further remove the dress code from the aegis of the state? Well, in defendant's position – defendant's position, as we understand it, is that the CDS Inc. Board has final decision-making authority and sole decision-making authority over the dress code. And therefore, there is no, in their view, intermediary between the dress code and the state itself. So that, I think, is not true as far as the defendants are concerned. It's the plaintiff's position that Roger Bacon Academy was actively engaged in establishing the dress code. Its president, Baker Mitchell, was on the board of CDS, was the chair of the board of CDS at the time the dress code was adopted. And in function, RBA, which operates all aspects of the school's day-to-day operations, including promoting enforcement of the dress code and proposing policy changes for the school, had a heavy hand in establishing the contours of the dress code itself. And so therefore, the sort of level of – different levels there don't make a difference to the outcome here. In addition, RBA, you know, was part of the submission of the application for a charter in the first place. It was jointly submitted with Baker Mitchell signing the charter application and the management agreement with RBA was actually incorporated into the charter that was entered into. So we believe that the facts are sufficient to show that Roger Bacon Academy, in addition to CDS, Inc., was engaged in state action there. Can I ask you a question going back to – there seemed to be a lot of discussion about whether you could get the same remedies under the charter that you would get under a 1983 claim, right? Do you remember the discussion among the court that you could sue to defend – to challenge the charter or to get your rights under the charter because there is an obligation to obey the Constitution? That's correct. And there would – the revocation of the charter would be the outcome that would come out of a complaint to the State Board of Education, for example. It would not result in a declaration, death declaratory judgment, or an injunction, which is primarily what the plaintiffs are seeking. Or attorney's fees. Or attorney's fees, yes. I mean, 1983 is a powerful statute. And I just was not clear on how a claim under the charter would be equal to a 1983 action. No, that's exactly right. And that's why the difference isn't the scope of the school's duty to comply with the Constitution. That remains constant. Can I ask a clarifying question? Because I don't recall. In your complaint, I know you have the third-party contract claim. Is that the remedy you're seeking to – when you want to enforce the constitutional obligations under the contract, is the remedy you're seeking revocation of the charter? Or is it for the school to declare its policy unconstitutional? For the court to declare the policy unconstitutional and in violation of the contract because of the school's failure to comply with the Constitution. Thank you. Yes. But coming back to Judge Motz's question, the scope of the constitutional protection is the same. The question is the level of accountability and to whom the charter school is accountable. And in this case, defendant's position would have the charter school be accountable essentially to the state only. And then they don't agree that we have a third-party beneficiary claim at all. So it would really result in charter school students not having access to the same level of constitutional remedies as their peers in traditional public schools. I wanted to get to the merits question, if I could, even though time, I see, is ticking. You may. Thank you, Your Honor. The defendants have stated that today, that physical differences were a part of the justification for the skirts requirement. That is absent from the record. There is no evidence that the plaintiffs, that the defendants have justified the imposition of skirts on girls based on any physiological reasons. The justification for the skirts requirement is that it will promote the view that boys and girls are different and that boys should behave in a chivalrous manner to girls, meaning treating them particularly gently and courteously. And that is from the plaintiff's statement of undisputed facts, which the defendants did not dispute. So they are now coming forward in the briefing on appeal with a number of different justifications that differ from that and attempting to distance themselves from Mr. Mitchell's justification that he explained in his email. But that justification, as explained in his email, is the real reason for the skirts requirement. It's the sole genuine reason for the skirts requirement. It was embraced by the CDS board unanimously at their depositions. It was echoed independently by three assistant principals. So the defendants cannot be heard here to invent a post-talk justification that's absent from the record. And those justifications are flatly unconstitutional because they, of course, reflect the same archaic and overly broad stereotypes that this court and the Supreme Court have invalidated again and again. Well, it's also factually undisputed, isn't it, that there was testimony of the detrimental effect on girls being subject to these gender stereotypes, whether they feel as confident, whether they engage in a full range of academic pursuits and different information regarding these effects, that it's not just simply wearing a skirt or wearing pants. And I haven't heard you say anything about the expert testimony in the record. Yes, Your Honor. Thank you for raising that. And that really does explain Title IX claims and shows why that testimony, not only their own, plaintiff's own testimony of their experiences of being required to wear skirts every day to school and the harmful impact that had as to their ability to participate freely and fully on equal terms to their male peers, but also the expert testimony that buttressed their articulation of the harms that they suffered. And, of course, that shows that these harms that they express are not merely subjective. Subjective, they are objective forms of harms that have been found to be borne out by academic literature and peer-reviewed studies that show that subjecting girls and students in general to practices in a classroom that highlight gender unnecessarily can have long-term social, academic, and psychological consequences for girls. And for those reasons, we believe that the plaintiffs have plainly met the test to sustain a violation of Title IX under the test that this court articulated in Grimm and Doe v. Fairfax County. In particular, the court doesn't need to decide the outer bounds of what subjected to discrimination means here because the conduct at issue here is dead center. The infliction of gender stereotyped like these was a feature of the skirts requirement. It was its intent rather than a bug. And this plainly constitutes discriminatory treatment within the meaning of Title IX. So just to close, if I may, that's why the plaintiffs are asking that this court uphold the district court's ruling that the skirts requirement violated the Equal Protection Clause. Of course, that the school engaged in state action. We would ask that the court further find that Roger Bacon Academy engaged in state action and reverse the district court on that point. And we would further request that the court reverse the district court's Title IX ruling as to both CDS and RBA and adopt the panel's sound reasoning. Thank you, Ms. Rowan. Yes, yes. I'm sorry. Am I correct, and I wasn't on the panel, the dissent addressed the equal protection claim on the merits. It said there was an equal protection violation. The majority opinion of the panel said there's no state action, so it didn't reach or address the merits. So the only merits consideration in the panel opinions was given the second part of the dissent. Is that correct? On the equal protection claim, that is correct. Equal protection merits. Yes, that is correct. Thank you. Thank you. Mr. Street and Ms. Sherwin, thank you very much for your arguments. And I want to say that we regret that we can't come down, all of us today, and greet you in our normal fashion in the Fourth Circuit. But, as you know, under the circumstances, that's in our interest and yours that we don't do that. But know, nonetheless, that we really appreciate you helping us on these thorny questions and ably advocating for your clients. With that, I will ask the clerk to adjourn the court sine die. And I will also ask you, as soon as we do adjourn, that you would leave the courtroom as soon as possible because we're going to expand our conference room today where you are. So we need to get the room as quickly as possible. Thank you so much. Thank you. This honorable question is adjourned sine die. Thank you.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum, Rushing, Heytens, Keenan